**VIRGINIA PANEL CORPORATION,
Plaintiff,**

v.

**MAC PANEL COMPANY, Defendant.**

**No. CIV.A. 5:93CV00006.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

April 17, 2001.

David Penrod, Hoover, Penrod, Davenport & Crist, Harrisonburg, VA, Christopher W. Brody, Lowe, Price, LeBlanc & Becker, Alexandria, VA, Timothy R. DeWitt, Arnold & Porter, Washington DC, Kenneth Krosin, Foley & Lardner, Washington DC, for Plaintiff.

Holmes Conrad Harrison, III, Harrison, Thumma & Start, P.C., Harrisonburg, VA, C. William Craycroft, Neal J. Stephens, Jennifer L. Tsay, McCutchen, Doyle, Brown & Enersen, Palo Alto, CA, Dalbert U. Shefte, Shefte, Pinckney & Sawyer, Charlotte, NC, Thomas H. Jenkins, Michael A. Morin, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Washington, DC, Robert J. Walters, Pillsbury Winthrop LLP, McClean, VA, for Defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge

This patent infringement case comes before the court on the motion of plaintiff

Virginia Panel Corporation (Virginia Panel), to hold defendant MAC Panel Company (MAC Panel) in contempt of the court's permanent injunction. On May 29, 1996, the court permanently enjoined MAC Panel from infringing Virginia Panel's U.S. Patent No. 4,329,005 ("the '005 patent") by manufacturing, using, or selling products that a jury previously adjudged to infringe the '005 patent. Virginia Panel alleges MAC Panel violated the injunction by selling and offering to sell the very products found to infringe, as well as a redesigned product that, due to a failed engineering effort, does not avoid infringement. Because the court does not find clear and convincing evidence that MAC Panel violated the injunction, Virginia Panel's motion shall be denied.

## I. BACKGROUND

Virginia Panel and MAC Panel are in the business of manufacturing and selling components, assemblies, and systems used in support of automatic test equipment (ATE), which is used to test systems—such as airplane black boxes—that have thousands of electronic connections. Some of the sales are for end-use by the Government, and some are for commercial, non-governmental end-use.

The two primary components of ATE are "interchangeable test adapters" (ITAs), which have male plugs, and "receivers," which have female receptacles. ITAs and receivers must be electrically connected together before a unit may be tested. The patent at issue claims a mechanism for engaging an ITA and a receiver. "The claimed mechanism requires that the ITA be suspended from 'fixed hanger plates' on opposite sides of the receiver," and that the contacts of the ITA "be drawn into contact with the receiver contacts through 'reciprocating' movement of 'slide plates' relative to the hanger plates." *Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 862–63 (Fed.Cir.1997).

MAC Panel also makes an ITA/receiver interface, "which uses a 'rotating latch mechanism' to push the ITA into contact with the receiver and to achieve proper alignment between the components' electrical contacts." *Id.* at 863.

On January 19, 1993, Virginia Panel sued MAC Panel, alleging that MAC Panel's sales of its ITA/receiver interface mechanism directly infringed the '005 patent. It also alleged that because ITAs constitute a material part of Virginia Panel's patented mechanism, MAC Panel's sales of MAC Panel ITAs for use in Virginia Panel receivers contributed to and induced infringement of the '005 patent. The case ultimately proceeded to trial, and on March 6, 1995, the jury rendered its verdict. The jury found that certain MAC Panel ITAs and receivers directly infringed the '005 patent under the doctrine of equivalents, and that MAC Panel contributorily infringed the '005 patent by selling MAC Panel ITAs for use in Virginia Panel receivers. Thereafter, the court issued a permanent injunction, which provides:

> Defendant MAC Panel Company is hereby ... enjoined from infringing U.S. Patent No. 4,329,005 by manufacturing, using, or selling for commercial, non-government, purposes the adjudged infringing receivers or ITAs it was making, using, and selling as of March 6, 1995, and before, namely its Series 96 receivers and ITAs and its rotating hanger/latch receivers in combination with fixed guide slots or ITAs therefor in the form being made and sold as of March 6, 1995, and before; or ... devices no more than colorably different from such infringing devices. This injunction does not apply to the manufacture and sale of ITAs for use with Virginia Panel Corporation receivers purchased prior to January 1993.[1]

(July 27, 1995, Order (temporary injunction); May 29, 1996 Order, *reprinted at*

---

1. The January 1993 date relates to the court's finding, in a previous proceeding, that Virginia Panel had granted an implied license for use of MAC Panel ITAs in Virginia Panel receivers purchased prior to January 1993. *See* 887 F.Supp. 880, 887 (1995).

1996 WL 335381 (converting temporary injunction into permanent injunction).) The parties do not dispute that the permanent injunction proscribes all types of infringement, including direct infringement, inducement of infringement, and contributory infringement. Following an appeal, the Federal Circuit Court of Appeals affirmed the judgment of infringement. *See* 133 F.3d 860 (1997).

On June 11, 1999, Virginia Panel moved the court to adjudge MAC Panel in contempt of the court's permanent injunction. The court determined that additional discovery was required on these matters, and the parties engaged in a limited period of discovery. On July 14, 2000, Virginia Panel filed its "Post–Discovery Brief in Support of its Motion for Order Adjudging Defendant MAC Panel Company in Contempt for Violating this Court's Injunction." This brief, MAC Panel's opposition, Virginia Panel's reply, and the exhibits attached thereto, are the record documents currently pending before the court.[2]

## II. DISCUSSION

 "A civil contempt proceeding for violation of an injunction issued after patent litigation, while primarily for the benefit of the patent owner, nevertheless involves also the concept of an affront to the court for failure to obey its order." *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1524 (Fed.Cir.1985). The court accordingly has jurisdiction over this contempt proceeding pursuant to the court's inherent power to enforce its own orders.

*See* 18 U.S.C.A. § 401 (West 2000); *KSM*, 776 F.2d at 1525 n. 3, 1526. While the enjoined party bears the practical burden "of avoiding infringement at the risk of contempt," *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 n. 8 (Fed.Cir. 1983), it is the movant who bears the burden of proof in a contempt proceeding, to "prov[e] violation by clear and convincing evidence." *KSM*, 776 F.2d at 1524.

Virginia Panel asserts that MAC Panel should be held in contempt for conduct falling within three categories:

1. Offers for sale and sales of old-design receivers that previously were adjudged to infringe;

2. Offers for sale and sales of MAC Panel ITAs for use in Virginia Panel receivers, which use, Virginia Panel alleges, constitutes inducement of and contributory infringement; and

3. Sales of a redesigned product, "Series 64" receivers, which Virginia Panel alleges constitute direct infringement.

### A. OLD DESIGN RECEIVERS

The first category of allegedly infringing and contemptuous conduct concerns MAC Panel's manufacture, offers for sale, and sales of "old-design" receivers. Virginia Panel alleges MAC Panel manufactured, offered to sell, and sold the exact types of receivers that the jury adjudged to infringe the '005 patent, including:

1. Series 06 receivers (exhibits 17–20);[3]

---

**2.** Although the motion and the pre-discovery brief in support of the motion allege that MAC Panel's president, Joseph Craycroft, also violated the injunction, Virginia Panel made no such allegations in its post-discovery brief. Because Virginia Panel stipulated that its post-discovery brief "supercedes the previously filed" brief, the court has not considered any allegations of the pre-discovery brief in deciding the instant motion. Therefore, Virginia Panel has not made an adequate show-

ing that Mr. Craycroft violated the court's injunction, and its motion shall be denied in this respect.

**3.** Unless otherwise indicated, exhibit references are to exhibits attached to Virginia Panel's "Post–Discovery Brief in Support of its Motion for Order Adjudging Defendant MAC Panel Company in Contempt for Violating this Court's Injunction."

2. Series 08 receivers (exhibits 22–24); and

3. LANTIRN receivers (exhibits 25–27).

Because contempt proceedings are summary in nature and risk depriving an accused infringer of its right to a trial by jury, "the initial question to be answered in ruling on a motion for contempt is whether contempt proceedings are appropriate." *KSM*, 776 F.2d at 1532. "That question is answered by the trial court's judging whether substantial disputed issues [concerning infringement] must be litigated." *Ibid.* Because MAC Panel does not dispute that the above-listed receivers are infringing, a contempt proceeding is appropriate to determine whether the complained-of conduct in this category violated the injunction. *See id.* at 1526 ("[C]ontempt proceedings . . . are available . . . with respect to devices previously admitted or adjudged to infringe.").

"The second question [is] whether an injunction against infringement has been violated." *Id.* at 1532. MAC Panel does not dispute that it manufactured, offered to sell, and sold the above-listed receivers, but contends that doing so did not violate the injunction because it is entitled to "governmental immunity" for those sales pursuant to 28 U.S.C. § 1498.

Section 1498 provides, in relevant part:

(a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .

For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498 (West 2000). This statute accomplishes two purposes: (1) It waives the Government's sovereign immunity to infringement suits, and (2) it immunizes an infringer who uses or manufactures an infringing product for the Government, and with the authorization and consent of the Government. *See, e.g., Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 555 n. 6 (Fed.Cir.1990) (noting that "section 1498(a) . . . waiv[es] sovereign immunity . . . in suits against the United States"); *Trojan, Inc. v. Shat-R–Shield, Inc.,* 885 F.2d 854, 856 (Fed.Cir. 1989) ("A supplier or potential supplier of an infringing product for the government is 'immune' from injunctive relief barring manufacture, sale, or bidding to supply such a product.").

■ MAC Panel contends it is Virginia Panel's burden, as the movant in a contempt proceeding, to show MAC Panel *did not* have the authorization and consent of the Government. The court disagrees. Section 1498 is considered to be an affirmative defense in infringement suits between private parties. *See Virginia Panel,* 133 F.3d at 869; *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 554 (Fed.Cir.1990). In a contempt proceeding, the party asserting an affirmative defense bears the burden of proving its applicability. *See Spindelfabrik Suessen–Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* 903 F.2d 1568, 1576 (Fed. Cir.1990) (holding that proponents of a license defense bore the burden of showing the applicability of the defense in a contempt proceeding). Accordingly, if Virginia Panel otherwise satisfies its bur-

den of proving contempt by clear and convincing evidence, it is incumbent upon MAC Panel to show that it had governmental immunity by producing evidence that the manufacture, use, or sale of the infringing products were "by or for," and "with the authorization and consent of," the U.S. Government.[4]

### 1. INTERNAL TRANSFERS OF SERIES 06 RECEIVERS (EXHIBITS 18, 19)

■ Virginia Panel produced two "order acknowledgments" indicating that MAC Panel manufactured infringing Series 06 receivers, to be billed to "MAC Panel East." Virginia Panel maintains that this internal manufacture and use of infringing products violates the injunction. MAC Panel responds that the internal transfers were made pursuant to a government subcontract with Racal–Dana Instruments, Incorporated (Racal–Dana), a government contractor. In support, one of MAC Panel's Vice–Presidents submitted a sworn affidavit and an engineering parts list showing the item number listed on MAC Panel's order acknowledgments corresponds to a part number listed in a prime contract between the U.S. Government and Racal–Dana. That contract in-

corporates a regulatory clause giving the U.S. Government's authorization of those sales and consent to assume infringement liability for them.[5] As discussed more fully in Part II.A.4 *infra*, this evidence is sufficient to trace the Series 06 receivers (that Exhibits 18 and 19 show were internally transferred) to a use that was "for," and "with the authorization and consent" of, the U.S. Government.

Accordingly, MAC Panel sufficiently established governmental immunity for its internal manufacture, use, and transfers of adjudged infringing Series 06 receivers. The court finds, therefore, that these instances of manufacturing and internally transferring Series 06 receivers were not in contempt of the court's injunction.[6]

### 2. SERIES 06 RECEIVERS SOLD TO ALLIED SIGNAL (EXHIBIT 20)

Virginia Panel produced a purchase order and sales documents (all compiled in Exhibit 20), establishing that MAC Panel manufactured, offered for sale, and sold adjudged infringing receivers to Allied Signal Aerospace (Allied Signal). At the hearing on this matter, MAC Panel produced a series of documents to show that it

---

4. The court has considered MAC Panel's arguments regarding law of the case, *res judicata*, and collateral estoppel, and finds these arguments to be meritless.

5. The "Authorization and Consent Clause" typically incorporated into government contracts—which clause is sufficient but not necessary to establish the Government's authorization and consent—is found in section 52.227–1 of the Federal Acquisition Regulations (FAR), which is codified at 48 C.F.R. § 52.227–1:

 (a) The Government authorizes and consents to all use and manufacture ... of any invention described in and covered by a United States patent ... [T]he Government assumes liability for all other infringement to

the extent of the authorization and consent hereinabove granted.
48 C.F.R. § 52.227–1 (2000).

6. Virginia Panel maintains that MAC Panel should be estopped from invoking governmental immunity if it failed to notify the Government of possible infringement according to the "Notice and Assistance Clause" set forth in 48 C.F.R. § 52.227–2 (2000). The court rejects this argument because Virginia Panel is not in a position to challenge such a failure: It was not a party to, or a beneficiary of, MAC Panel's contracts with the Government. Virginia Panel's citation of *Boyle v. United Technologies Corporation*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), is inapposite. *Boyle* involved different questions of law than the instant case.

did so "for," and "with the authorization and consent" of the Government.

Cross-referencing each document to the next establishes a link between MAC Panel's sales to Allied Signal and a contract that incorporates the Authorization and Consent Clause set forth in 48 C.F.R. § 52.227–1. Virginia Panel's Exhibit 20 contains the various sales documents establishing MAC Panel's sale of receivers to Allied Signal. Those sales documents indicate that one of the receivers sold had a part number which, in turn, was the subject of one of Allied Signal's "Requests for Quotation." (Def.'s Hr'g Ex. 4 at 006393.) The Request for Quotation references a government contract bearing a contract number that is referenced in a supply schedule. The supply schedule references a "PR / NR" number. The same "PR / NR" number is referenced in a solicitation form that incorporates the § 52.227–1 Authorization and Consent Clause.

MAC Panel thus established that its sales to Allied Signal, evidenced by Exhibit 20, were made "for" and "with the authorization and consent" of the U.S. Government. Having done so, MAC Panel sufficiently established that it enjoys governmental immunity for those sales pursuant to 28 U.S.C. § 1498. The court accordingly shall not hold MAC Panel in contempt for its Series 06 receiver sales to Allied Signal.

### 3. SERIES 08 RECEIVERS SOLD TO RAYTHEON (EXHIBITS 22–24, 54)

Virginia Panel produced several MAC Panel forms (requests for price quotations, and confirmations of orders) indicating MAC Panel sold adjudged infringing Series 08 receivers to Raytheon Missile Systems Company (Raytheon). MAC Panel responds that Raytheon's request for quote states explicitly that "Hughes Missile Systems Purchase Attachment GL–21 shall apply to all subsequent orders," (Pl.'s Ex. 22), and that Attachment GL–21 grants governmental authorization and consent to use, manufacture, and sell the Series 08 receivers, by incorporating FAR 52.227–1. (*See* Def.'s Ex. 9.)

Virginia Panel correctly observes that Attachment GL–21 distinguishes between different types of work orders. One provision of GL–21 lists the FAR clauses applicable to "all government work." Another provision lists the clauses applicable to "all orders." (*See* Def.'s Ex. 9 at MP–C 012460.) While the provision that applies to "all government work" incorporates the Authorization and Consent clause set forth in FAR 52.227–1, the "all orders" provision does not.

The question becomes whether the "government work" provision applies to the Raytheon purchase order. If it does, then the purchase order was made with the Government's authorization and consent. If it does not, then Attachment GL–21 does not support MAC Panel's argument that authorization and consent was given for Raytheon's order.

The government work provision applies by its own terms "[i]f it is noted on the face of th[e] Order that U.S. Government work is involved." (Def.'s Ex. 9 at 012460.) The purchase order bears a notation that the products were "Certified for National Defense Use Under DPAS (15 CFR Part 700) [the Defense Priorities and Allocations System]." (Pl.'s Ex. 23.) The purchase order also indicates a "Comm. Code" of "PAX." At oral argument, defense counsel represented that "PAX" signifies the "Patuxent Naval Air Station."

Although the meanings of "Comm.Code" and "PAX" are not clear on the face of the order, and although defense counsel submitted no evidentiary support for his reading of "PAX" as the "Patuxent Naval Air Station," this reading is marginally corrob-

orated by the Fourth Circuit's reference to the Patuxent Naval Air Station as "Pax River" in *Emory v. McDonnell Douglas Corporation*, 148 F.3d 347, 348 (4th Cir. 1998). The meaning of the other notation cited by MAC Panel, "Certified for National Defense Use Under DPAS," also is unclear. Because the parties did little to explain this meaning, the court has conducted an independent review of the DPAS regulations, *ex proprio motu.*

The purchase order "certified" the products for use in the DPAS presumably pursuant to 15 C.F.R. § 700.12(d) (2000), which requires "rated orders" to include such a certification statement. It thus appears that the Raytheon purchase order was a "rated order." A rated order is a purchase order made "in support of" an "approved program." *Id.* § 700.8. When a supplier such as MAC Panel receives a rated order, it must give such an order preferential treatment, *e.g.*, by filling the order before all others and by ensuring timely delivery of the ordered goods. *See id.* §§ 700.3; 700.13; 700.14.

The court finds the evidence that the Raytheon purchase order was made "in support of" an "approved program" sufficiently indicative that government work was involved, in some manner, with the order. Accordingly, MAC Panel sufficiently established that Attachment GL–21 incorporated the authorization and consent clause, and that it is entitled to governmental immunity under 28 U.S.C. § 1498. MAC Panel therefore shall not be held in contempt for manufacturing, using, and selling its Series 08 receivers to Raytheon, as evidenced by Virginia Panel's Exhibits 22, 23, 24, and 54.

### 4. LANTIRN RECEIVERS SOLD TO RACAL–DANA, LOCKHEED, AND ASCOR (EXHIBITS 25–27)

Virginia Panel also produced price quotations and order confirmations showing that MAC Panel sold infringing LANTIRN receivers to Racal–Dana, Lockheed Martin Corporation (Lockheed), and ASCOR, Incorporated (ASCOR).[7]

With respect to exhibit 25 (sales to Racal–Dana), MAC Panel produced a prime contract issued by the U.S. Air Force that designates Racal–Dana as the contractor. The prime contract orders a part whose part number is identical to the part number listed on Exhibit 25, evidencing MAC Panel's sale to Racal–Dana. The prime contract explicitly provides governmental authorization and consent, suggesting the sale to Racal–Dana was made with the U.S. Government's authorization and consent.

Virginia Panel objects that there is no evidence these LANTIRN items were not sold to foreign governments. The court disagrees. MAC Panel produced a "Shipping Instruction" form directing certain items to be shipped to the Nellis Air Force Base. The solicitation number on the shipping instruction form is the same solicitation number listed in the U.S. Government/Racal–Dana prime contract. The prime contract, in turn, lists the same part number as the MAC Panel/Racal Dana price quotation. This evidence neatly tracks MAC Panel's Racal–Dana sale to the Nellis Air Force Base, and shows the Racal–Dana sale was made for, and with the authorization and consent of, the U.S. Government.

Virginia Panel also objects that MAC Panel did not produce the MAC Panel/Ra-

---

**7.** LANTIRN refers to the "Low Altitude Navigation and Targeting InfraRed for Night" technology. *Cf.* Robert A. Coe & Michael N. Schmitt, *Fighter Ops for Shoe Clerks,* 42 A.F. L.Rev. 49, 59 (1997) (describing the LANTIRN technology).

cal–Dana subcontract, and thus failed to show that the subcontract contained the Authorization and Consent Clause. The court is not persuaded by Virginia Panel's objection, because § 1498 extends governmental immunity to all subcontracts, as long as the prime contract evidences the Government's authorization and consent. *See W.L. Gore & Assocs. v. Garlock, Inc.,* 842 F.2d 1275, 1282–83 (Fed.Cir.1988) ("In the event [the defendant] becomes a sub- or sub-sub-contractor, a gracious government has also taken care of that possibility in the second paragraph of 1498 ....."). By linking the complained-of Racal–Dana sale to a prime contract that evidences the Government's authorization and consent, MAC Panel established governmental immunity for that sale.

As to exhibits 26 and 27 (sales to ASCOR and Lockheed), MAC Panel produced a variety of purchase orders, invoices, and contracts, which collectively indicate that the items sold to ASCOR and Lockheed were sold pursuant to a U.S. Government contract that incorporates an Authorization and Consent Clause. Accordingly, MAC Panel shall not be held in contempt for the sales to Racal–Dana, ASCOR, and Lockheed, as evidenced by exhibits 25, 26, and 27.

## B. MAC PANEL ITAS, SOLD FOR USE IN VIRGINIA PANEL RECEIVERS

The second category of allegedly infringing and contemptuous conduct concerns MAC Panel's offers for sale and sales of MAC Panel ITAs. The '005 patent may be infringed when MAC Panel ITAs are used in combination with Virginia Panel receivers. Virginia Panel contends MAC Panel induced and contributed to MAC Panel's customers' infringement—and thus, violated the injunction—by selling ITAs to its customers without notifying them that using the ITAs in this way would constitute infringement. Specifically, Virginia Panel complains of the following acts:

1. Sales of MAC Panel ITAs to Raytheon, for use in Virginia Panel receivers (exhibits 42, 43, 73);
2. Sales of MAC Panel ITAs to Maxsys Technologies Corporation (Maxsys), for use in Virginia Panel receivers (exhibit 72); and
3. Sales of ITAs containing "split roller bearings," which allegedly have no use besides inducing and contributing to infringement of the '005 patent.

### 1. ITA SALES TO RAYTHEON (EXHIBITS 42, 43, 73)

Virginia Panel alleges MAC Panel offered for sale and sold MAC Panel ITAs to Raytheon, with the intent and knowledge that Raytheon would use the ITAs in Virginia Panel receivers. Virginia Panel contends that this conduct constitutes inducement of and contributory infringement in violation of the permanent injunction.

Inducement of infringement is proscribed by 35 U.S.C. § 271(b),[8] and contributory infringement is proscribed by § 271(c).[9] To prove a defendant is liable for contributing to or inducing infringement, a plaintiff must prove the infringement that allegedly was contributed to or

---

**8.** "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C.A. § 271(b) (West 1984).

**9.** Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in prac-

ticing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C.A. § 271(c) (West Supp.2000).

induced. "[T]here can be no inducement of infringement or contributory infringement under 35 U.S.C. § 271(b), (c) ... in the absence of direct infringement." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed.Cir. 1991). *See also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) ("[I]t is settled that if there is no direct infringement of a patent there can be no contributory infringement.... '[I]f the purchaser and user could not be amerced as an infringer certainly one who sold to him * * * cannot be amerced for contributing to a non-existent infringement.'") (quoting *Mercoid Corp. v. Mid–Continent Inv. Co.*, 320 U.S. 661, 674, 64 S.Ct. 268, 88 L.Ed. 376 (1944) (Roberts, J., concurring)); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1350–51 (Fed.Cir.2001) ("Inducement only occurs if the party being induced directly infringes the patent."); *Kendall Co. v. Progressive Med. Tech., Inc.*, 85 F.3d 1570, 1573 (Fed.Cir.1996) ("Without direct infringement by these purchasers, Progressive could not have contributorily infringed the '449 patent."); *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) (holding that "an injunction may not issue precluding acts under a theory of dependent infringement where the acts do not contribute to or induce direct infringement by another"); *Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co.*, 803 F.2d 1170, 1173 (Fed.Cir.1986) ("[I]n reaching the conclusion that PDI's sale or offer of sale ... violated the injunction against contributory infringement ... the District Court necessarily found that there was direct infringement of the patent."). Proof of direct infringement may be shown by direct or circumstantial evidence. *See Moleculon Research Corp. v. CBS*, 793 F.2d 1261 (Fed.Cir.1986).

■ To prove that MAC Panel's offering for sale, manufacturing, and selling ITAs to Raytheon constitutes inducement of or contributory infringement, Virginia Panel accordingly must prove that Raytheon directly infringed the '005 patent by using MAC Panel ITAs in Virginia Panel receivers. Virginia Panel's evidence consists of three exhibits. The first exhibit is an offer for sale from MAC Panel to Raytheon which begins as follows: "Below are [MAC Panel] part numbers to support the ITA side of the system. (VPC [*Virginia Panel*] Series 90 25 slot receiver mechanism)." (Pl.'s Ex. 42.) This is clear evidence that MAC Panel offered MAC Panel ITAs for sale to Raytheon, for use in Virginia Panel receivers. The second exhibit is a confirmation form from Raytheon to MAC Panel, confirming the purchase of various MAC Panel ITA products. Of the thirteen different types of products purchased, nine are listed on MAC Panel's offer for sale, (*see* Pl.'s Ex. 43), suggesting Raytheon accepted MAC Panel's offer and purchased MAC Panel ITAs. The third exhibit is the declaration of a Virginia Panel Vice President, stating that Virginia Panel previously had sold Virginia Panel receivers to Raytheon. (*See* Pl.'s Ex. 73.) This declaration suggests that Raytheon could have used its Virginia Panel receivers with the ITAs purchased from MAC Panel.

The court finds the evidence produced by Virginia Panel insufficient to prove inducement of or contributory infringement. While Virginia Panel has shown that MAC Panel offered MAC Panel ITAs for sale with the *intent* that they be used in an infringing manner, Virginia Panel produced no direct evidence that Raytheon *actually* used the ITAs in an infringing manner, as required under §§ 271(b) and (c).[10] Nor is there circumstantial evidence

10. Virginia Panel alleges that Raytheon once displayed a MAC Panel ITA in a Virginia

of such use, such as evidence that Raytheon only had Virginia Panel receivers and thus only could have used Virginia Panel's receivers with MAC Panel ITAs. Because an essential element of inducement and contributory infringement is proof of direct infringement by the third party purchaser, Virginia Panel's evidence is deficient.

The court does not condone MAC Panel's apparent attempt to induce infringement. Nevertheless, the injunction in this case prohibits MAC Panel "from infringing U.S. Patent No. 4,329,005." While a contempt proceeding decides a violation *vel non* of an injunction and not patent infringement, actions which do not infringe cannot violate an injunction against infringement because "[i]nfringement is the *sine qua non* of [a] violation." *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1528 (Fed.Cir.1985). Having failed to produce sufficient evidence that Raytheon directly infringed the '005 patent, Virginia Panel has not established by "clear and convincing evidence" that MAC Panel violated the preliminary injunction by inducing or contributing to Raytheon's direct infringement. Accordingly, MAC Panel shall not be held in contempt for selling or offering to sell ITAs to Raytheon.[11]

### 2. ITA SALES TO MAXSYS (EXHIBIT 72)

Virginia Panel's next contention is that MAC Panel induced and contributed to infringement of the '005 patent by offering to sell a MAC Panel ITA to Maxsys. Again Virginia Panel has failed to produce

any evidence that Maxsys actually used the MAC Panel ITA in an infringing manner. Virginia Panel's only evidence is a declaration of a Maxsys employee stating that he requested a quote for MAC Panel ITAs in November 1998, and that Maxsys had Virginia Panel receivers. This evidence is insufficient to prove MAC Panel induced or contributed to Maxsys's infringement because the declaration does not indicate Maxsys actually bought or used any MAC Panel ITAs, let alone that it did so in combination with Virginia Panel receivers. Moreover, MAC Panel produced contrary evidence, indicating that Maxsys previously had purchased redesigned MAC Panel receivers—which can be used in MAC Panel ITAs without infringing—and evidence that the November 1998 request for quote did not result in any sales to Maxsys. (*See* Def.'s Ex. 3.) MAC Panel accordingly shall not be held in contempt for any offers to sell its ITAs to Maxsys.

### 3. ITAS CONTAINING "SPLIT ROLLER BEARINGS"

Virginia Panel next alleges that MAC Panel's production of ITAs with "split roller bearings" constitutes inducement of and contributory infringement. Virginia Panel's evidence primarily is used to support the proposition that the use of split roller bearings has no purpose except to make MAC Panel ITAs compatible with Virginia Panel receivers. Again Virginia Panel has failed to produce any evidence that an induced party actually used MAC Panel ITAs with Virginia Panel receivers. Ac-

---

Panel receiver at a trade show, but the allegation is supported by reference to an exhibit that is not attached to Virginia Panel's briefs, "Exhibit A." Even if Virginia Panel had attached the exhibit, it does not appear from Virginia Panel's allegations that the exhibit alone would be sufficient to establish contempt by clear and convincing evidence.

**11.** The court does not find that the offer for sale can form the basis of liability under § 271(a). Because MAC Panel ITAs only infringe the '005 patent when used in combination with certain types of receivers, offers for sale of ITAs are properly examined under § 271(c), which requires a showing of direct infringement in addition to the offer for sale.

cordingly, MAC Panel shall not be held in contempt for producing and selling ITAs with split roller bearings.

## C. REDESIGNED "SERIES 64" RECEIVERS

The third category of allegedly infringing and contemptuous conduct concerns MAC Panel's manufacture, offers for sale, and sales of a redesigned receiver—the "Series 64" receiver—ostensibly modified to avoid infringement. It bears repeating that "the initial question to be answered in ruling on a motion for contempt is whether contempt proceedings are appropriate. That question is answered by the trial court's judging whether substantial disputed issues [concerning infringement of the new device] must be litigated." *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.,* 776 F.2d 1522, 1532 (Fed.Cir.1985).

Virginia Panel asserts that MAC Panel's redesigned Series 64 receiver infringes the '005 patent because the slots in the sides of the Series 64 receiver guide the ITA roller pins into the receiver when the ITA and receiver are engaged. As discussed below, it is unclear why Virginia Panel claims that this constitutes infringement. The argument appears to be that the slots are the functional equivalents of "guide slots," which is a phrase used in Claims 1, 3, 4, and 6 of the '005 patent.[12]

Virginia Panel's argument is as follows. After the issuance of the permanent injunction, MAC Panel attempted to design a receiver that would not infringe. It created a redesigned "Series 75" receiver, which Virginia Panel concedes is non-infringing. The redesigned Series 75 apparently differs from the infringing receivers in three ways: (1) The slots on the Series 75 were widened such that, unlike the parallel-shaped slots on MAC Panel's infring-

ing receivers, the new slots would not guide the pin into the receiver; (2) Rectangular pieces of metal called "guide tongues" were added to the Series 75 to accomplish the guiding function; and (3) A bearing was added to prevent a sliding action from occurring between the rotating latch and the screw around which it rotated. Virginia Panel's technical expert testified at trial that the third change alone would not avoid infringement because a device with such a change still would be equivalent to the device claimed by the '005 patent. Therefore, Virginia Panel states, only the first two changes—which relate to the "guiding function" of the slots—prevented the Series 75 receiver from infringing. The import of the above argument is unclear.

Having set forth these premises, Virginia Panel devotes one paragraph of its opening brief to the question presented in this proceeding; namely, whether the *Series 64* infringes. Virginia Panel states that although the Series 64 contains widened slots and "guide tongues" like the Series 75, the Series 64 operates differently than the Series 75 when "loaded with modules, pins, and patchcords." Due to "bungled engineering," it says, the bearings on the ITA pins roll along the Series 64's receiver slots. Virginia Panel concludes that the Series 64 infringes because its slots perform the "guiding" function allegedly called for by the '005 patent.

■ There are many problems with Virginia Panel's analysis. First, Virginia Panel impermissibly compares the Series 64 device to the redesigned Series 75 device to prove that the Series 64 infringes. It is well-established that infringement is determined by comparing the accused device to the patent *claims,* not to some non-infringing device, nor even to the adjudged

---

12. Claim 1, for example, describes "[a] receiver body having spaced straight *guide slots* which are parallel and whose axes are normal to an electrical contact plane of the receiver . . . ." ('005 patent, col. 7, ll. 52–56 (emphasis added).)

infringing device. *See, e.g., Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1351 (Fed.Cir.2001) (reciting the general rule that an infringement analysis involves comparing "the properly construed claim ... with the accused device"); *KSM,* 776 F.2d at 1528 ("In making a finding that the accused new device is an infringement, the court cannot avoid looking at the claims of the patent.").

 Second, Virginia Panel does not make clear whether it is alleging literal infringement or infringement under the doctrine of equivalents. "To establish literal infringement, a plaintiff must demonstrate that every limitation in the claim is literally met by the accused device." *Enercon GmbH v. International Trade Comm'n,* 151 F.3d 1376, 1384 (Fed.Cir. 1998). Under the doctrine of equivalents, a product that does not literally infringe may nonetheless infringe if the product "contain[s] elements identical or equivalent to each claimed element of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1331–32 (Fed.Cir.2001). One test of equivalence is whether the accused device "performs substantially the same function in substantially the same way to obtain the same result" as the claimed elements. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). The court construes Virginia Panel's argument to be that the Series 64 device infringes under the doctrine of equivalents, because Virginia Panel concedes in its reply brief that "the Series 64 receivers do not literally infringe" at least one claim limitation. If

Virginia Panel intended otherwise, the court rejects a literal infringement argument for lack of adequate briefing.

 Third, Virginia Panel incorrectly assumes that the meaning of "spaced straight guide slots which are parallel" already has been construed and is established as the law of the case. Like any infringement analysis, an infringement analysis under the doctrine of equivalents must begin with a construction of the patent claims' scope and meaning. *See Cybor Corp. v. FAS Tech., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc). The instant case arises in a peculiar context. Although it now is established that claim construction is purely a question of law to be decided by the court and not by the jury, *see id.* at 1456, the trial in this case occurred so long ago that the question of claim construction was submitted to the jury. When claims have been construed by a jury, a court in a subsequent proceeding ordinarily construes the claims *de novo. See, e.g., Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 154 F.3d 1345, 1350 (Fed.Cir.1998); *Virginia Panel,* 133 F.3d at 865–66. The court therefore rejects Virginia Panel's contention that any construction by the jury of the phrase "spaced straight guide slots which are parallel" is the law the case. Regardless, it appears to have been undisputed at trial that the accused devices had parallel, spaced straight guide slots, so the jury would not have had occasion to construe that phrase.

 Fourth, Virginia Panel has not presented sufficient evidence of equivalence.[13] "Determination of infringement ... under the doctrine of equivalents, is a question of fact." *DeMarini Sports,* 239 F.3d at 1322. The ultimate burden of proving equivalence rests on the patentee, Virginia Panel. *See Zelinski v. Brunswick*

---

**13.** The court accordingly finds it unnecessary to construe the relevant claims *de novo.*

*Corp.*, 185 F.3d 1311, 1317 (Fed.Cir.1999) (holding that the conclusory statement of a patent expert failed to provide an adequate evidentiary basis to support claim of equivalence); *see also Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1310 (Fed.Cir. 2001) ("A patentee claiming infringement must present *proof* that the accused product meets each and every claim limitation." (emphasis added)). In its briefs, Virginia Panel does not cite any evidence to show that the redesigned Series 64 receiver is equivalent to the '005 patent claims. Although Virginia Panel refers to several paragraphs of trial testimony from its technical expert on the meaning of "spaced straight guide slots," that trial testimony at most concerns equivalence between the adjudged infringing receivers and the '005 patent. Virginia Panel also refers to two exhibits that concern the redesigned Series 75 receiver. That evidence is irrelevant because the Series 75 is not the device that is alleged to infringe. Even if it were relevant to compare the Series 64 to an adjudged infringing device, the redesigned Series 75 is not an adjudged infringing device, and did not even exist at the time of the original trial.[14] Moreover, it is impermissible to establish equivalence by comparing the accused device to something other than the patent claims. *See supra.* Virginia Panel called no experts or other witnesses to testify at the hearing on this matter, and Virginia Panel points to no other evidence to show that MAC Panel's redesigned Series 64 receiver falls within the scope of the '005 patent claims. For example, Virginia Panel cited no evidence that the Series 64's widened slots and guide tongues perform the same function in the same way as "spaced straight guide slots which are parallel," ('005 patent, (claims 1, 3, 6), *e.g.*, col. 7, ll. 55–56), or that the widened slots and added guide tongue would be considered "insubstantial" differences by one who is skilled in the art. Rather, to establish the equivalence of the Series 64 receiver, Virginia Panel relies solely on attorney argument and conclusory assertions that equivalence is "very clear."[15]

**14.** Ironically, Virginia Panel's comparison of the Series 64 to the Series 75 suggests that the Series 64 is *not* infringing. Virginia Panel concedes that the widening of the receiver slots and the addition of the guide tongues in the Series 75 "successfully avoided infringement," and that the Series 64 also contains widened slots and guide tongues. (Pl.'s Br. at 37.) Although Virginia Panel contends that the Series 75 and Series 64 operate differently when "loaded with modules, pins, and patchcords," it does not explain clearly the mechanical reason for the difference.

**15.** The following excerpt from Virginia Panel's reply brief illustrates well the total absence of citation to any evidence in support of equivalence:

MAC Panel asserts that the Series 64 does not infringe under the doctrine of equivalents, but it fails to address the doctrine of equivalents on an element-by-element basis, as required by the Supreme Court. When doing so, *it becomes very clear* that the

devices are equivalent. In particular, the entire point of the claimed axis [sic] being normal to the contact plain [sic] is to prevent the ITA from crushing contacts when the ITA is engaged in the receiver. Thus, when engagement begins, the slide plate pushes the ITA both upward and into the contact plain [sic] of the receiver. The guide slot prevents the ITA from moving too far upward and crushing the contacts in both the receiver and ITA. A guide slot whose axes was [sic] less than 5 degrees from normal to the contact plain [sic] *clearly performs the same function in the same way to achieve the same result.*

The humorous aspect of MAC Panel's argument is that it and its so-called expert still do not understand why its Series 64 device operates in a manner different than its other re-designed interface devices. The difference has nothing to do, as MAC Panel suggests, with any misplacement of the ITA on the receiver. Rather, the difference in operation is due to a structural difference [between] Virginia Panel's 90 Series and

The court finds Virginia Panel's evidence insufficient to establish summarily that the Series 64 device infringes the '005 patent under the doctrine of equivalents. Because the court finds "substantial open questions" concerning infringement, a contempt proceeding is not the appropriate forum to resolve this issue.

## D. ATTORNEY'S FEES

■ All parties move for an award of attorney's fees pursuant to 35 U.S.C. § 285, but none submitted affidavits or other evidence in support of their motions. The parties accordingly have provided the court with no meaningful basis to make an award of attorney's fees. *Cf. Webb v. Board of Educ.*, 471 U.S. 234, 242, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) ("[T]he party seeking an award of fees has the burden of submitting 'evidence supporting the hours worked and rates claimed.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (noting that adequate evidence must be submitted in support of attorney's fees petition, both "to justify the reasonableness of the requested rate or rates," and "[t]o inform and assist the court in the exercise of its discretion"). Therefore, no award of attorney's fees shall be made.

the ITAs for its other series of interface devices. In its rush to copy Virginia Panel's 90 Series design to sell as the MAC Panel Series 64, MAC Panel failed to develop an understanding of the device before copying it.

On most of Virginia Panel's ITA's, the ITA pins with split roller bearings are placed near the center of the side of the ITA frame. On the Virginia Panel 90 Series ITAs, however, the pins with split roller bearings are placed close to the face of the ITA on the sides of the ITA frame. This difference in placement of the ITA causes a loaded ITA to list when it is hung off the hanger elements

## III. CONCLUSION

MAC Panel takes risks when it sells products that infringe its competitors' patent in the hope that governmental immunity will attach to such sales. Although MAC Panel assembled enough evidence to withstand a finding of contempt on Virginia Panel's instant motion, the above discussion makes clear that MAC Panel bears the burden of establishing immunity. MAC Panel accordingly should be especially vigilant to ensure that those sales are, in fact, made for the Government, and with its authorization and consent, and to preserve the evidence of the same.

Nevertheless, Virginia Panel bears the ultimate burden of proving contempt by clear and convincing evidence. The evidence offered in support of the instant motion is insufficient to prove MAC Panel infringed, induced infringement, or contributed to the infringement of the '005 patent by selling adjudged infringing products in contempt of the court's permanent injunction. Nor has Virginia Panel established that contempt proceedings are an appropriate forum to litigate the question of whether the redesigned device infringes the '005 patent. Accordingly, Virginia Panel's contempt motion shall be denied.

An appropriate Order this day shall issue.

of a receiver. In MAC Panel's rotating latch type receiver, the listing of the ITA results in the rotating latches lifting the ITA during engagement until the ITA pins touch and roll along the upper surfaces of the top slots in the sides of the Mac Panel Series 64 receiver. The slots guide the ITA pins into the receiver and prevent the ITA from crunching [the] pins.

(Virginia Panel Corporation's Post–Discovery Reply in Support of its Motion for Order Adjudging Defendant MAC Panel Company in Contempt for Violating This Court's Injunction, at 34–35 (footnote omitted) (emphasis added).)

*ORDER*

Before the court is the plaintiff's motion to hold the defendant in contempt of the court's permanent injunction, filed June 11, 1999. For the reasons stated in the accompanying Memorandum Opinion, it is accordingly this day

ADJUDGED, ORDERED,
AND DECREED

that the plaintiff's "Motion for Order Adjudging MAC Panel Company and Joseph Craycroft in Contempt for Violating this Court's Permanent Injunction and for an Accounting of Damages," filed June 11, 1999, shall be, and it hereby is, DENIED.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record.